IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JERRY MOATS,

      Plaintiff,


v.                       Civil Action No. 2:04-cv-00696


JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

Plaintiff, Jerry Moats, (hereinafter referred to as "Claimant"), protectively filed an application for SSI on August 31, 2001, alleging disability as of August 28, 2001, due to conditions of his legs, knees, ankles, back, neck and shoulder, and

"nerves".   (Tr. at 741-6, 748, 753.)   The claim was denied initially and upon reconsideration.   (Tr. at 718-22, 725-7.)   On April 9, 2002, Claimant requested a hearing before an Administrative Law Judge ("ALJ").   (Tr. at 728.)   The hearing was held on April 4, 2003 before the Honorable Richard J. Maddigan. (Tr. at 79-96.)   By decision dated June 23, 2003, the ALJ determined that Claimant was not entitled to benefits.   (Tr. at 18-25.)   The ALJ's decision became the final decision of the Commissioner on June 25, 2004, when the Appeals Council denied Claimant's request for review.   (Tr. at 10-2.)   On July 7, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.   See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).   A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."   42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.   20 C.F.R. § 416.920 (2003).   If an individual is found "not disabled" at any step, further inquiry is unnecessary.   Id. § 416.920(a).   The first

2

inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f)(2003). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19, Finding No. 1, tr. at 24.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of borderline intellectual functioning, plantar fascitis, and degenerative disc disease with probable stenosis. (Tr. at 19-20, Finding No. 2, tr. at 24.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19-20, Finding No. 3, tr. at 24.)  The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations. (Tr. at 23, Finding No. 6, tr. at 25.)  As a result, Claimant cannot return to his past relevant work. (Tr. at 23, Finding No. 7, tr. at 25.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as a sedentary machine operator, assembler, and a bench table worker, which exist in significant numbers in the national economy. (Tr. at 24, Finding No. 12, tr. at 25.)  On this basis, benefits were denied. (Tr. at 24, Finding No. 13, tr. at 25.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was

4

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 49 years old at the time of the administrative hearing. (Tr. at 19, 748.) He has a tenth grade education. (Tr. at 759.) In the past, he worked as a welder and a logger. (Tr. at 754.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

A.    *Mental Impairments*

At the request of Claimant's attorney, Wilda Posey, M.A. performed a psychological evaluation upon Claimant in September, 2001. (Tr. at 802-9.) Claimant told Ms. Posey that he was filing for disability due to back pain, neck pain, arthritis, and severe headaches, and that he had been in severe pain since 1993, the date of his motor vehicle accident. (Tr. at 802.) Ms. Posey observed that Claimant's eye contact was consistent and that he was polite and cooperative, although his mood was depressed and he began to cry during the evaluation. Claimant had moderately impaired insight as to his condition, and moderate deficiencies in judgment. His immediate and recent memory was within normal limits, but his remote memory was markedly impaired. (Tr. at 806.)

Administration of the WAIS-III yielded a full scale IQ score of 72, indicating borderline intellectual functioning. (Tr. at 806.) Psychological screening detected moderate anxiety and severe depression. Ms. Posey diagnosed major depressive disorder, single episode, mild; pain disorder associated with both psychological factors and a general medical condition; borderline intellectual functioning; and a current GAF of 55. (Tr. at 808.) She recommended that Claimant follow up with a psychiatrist to determine if he would benefit from medical intervention, and further recommended referral to a pain management clinic. (Tr. at

6

809.)

Debra L. Lilly, Ph.D. completed a Psychiatric Review Technique questionnaire on December 21, 2001.  (Tr. at 840-53.)  She noted Claimant's borderline intellectual functioning, major depression, and pain disorder.  (Tr. at 840-9.)  She opined that Claimant had mild restrictions in his activities of daily living and social functioning, and had mild difficulties in maintaining concentration, persistence, or pace.  He had no repeated episodes of decompensation of extended duration.  (Tr. at 850.)

Dr. Lilly completed a Mental Residual Functional Capacity Assessment form concerning Claimant on that same date.  (Tr. at 866-9.)  She found that Claimant was moderately limited in his ability to understand, remember and carry out detailed instructions, but had no other limitations.  (Tr. at 866-7.)  She commented that Claimant "may have some limitations in the ability to learn and perform complex activities.  He, however, [has] the ability to learn and perform simple, unskilled, work-like activities."  (Tr. at 868.)  These findings were affirmed by Rosemary Smith, Psy.D. on March 12, 2002.  (Tr. at 866.)

There is no other medical evidence pertaining to mental health treatment or evaluation in the file.

B.   _Physical Impairments_

Claimant was referred to William C. Welch, M.D., a neurosurgeon, by Nunsio Pagano, D.C.  (Tr. at 928.)  Dr. Welch

7

wrote to Dr. Pagano on April 2, 2001 and reported Claimant's complaints of neck pain, tingling in his left arm, back pain and leg numbness/weakness, limitations in walking, swelling in his legs and feet, and difficulty sleeping due to pain. Claimant stated that these injuries arose from a motor vehicle accident in 1983.[1] On examination, Dr. Welch observed that Claimant was healthy-looking and in no acute distress. Claimant's cervical range of motion was 50% of normal. His lumbar flexion was 30 degrees and extension was 20 degrees. His lateral flexion was 20 degrees. Claimant was unable to walk on his heels and toes and exhibited a generally antalgic gait. He had weakness in various muscles in his left leg, with strength measuring at 4/5; however, the remainder of his motor exam, including straight leg raising, was normal. (Tr. at 928.)

Dr. Welch reviewed an MRI scan of March 21, 2001 and detected mild degenerative disc disease. A CT scan of Claimant's lumbosacral spine dated December 2000 revealed probable stenosis at L3-4. Dr. Welch opined that Claimant had probable lumbar spinal stenosis, and requested that he get a myelogram and a post-myelographic CT scan. He stated that he wished to see Claimant again after these tests were performed. (Tr. at 928.) It does not appear that these tests were performed or that Claimant ever

---

[1] This date is presumed to be a typographical error. Other records consistently record the accident date as 1993.

8

returned.

During September, October and November 2001, Claimant sought chiropractic treatment for his ailments. (Tr. at 821-39, 870-77.) On October 9, 2001, he began treating with family practitioner Shahrooz S. Jamie, M.D. (Tr. at 890.) Claimant's complaints included neck, back, shoulder and knee pain, as well as occasional complaints of headaches. (Tr. at 890-920.) Claimant's range of motion was impaired on some, but not all, of his visits. Dr. Jamie diagnosed degenerative disc disease and stenosis at L3-4 (tr. at 891, 894-6); arthritis (tr. at 892, 894, 896, 897, 899, 901-2, 906, 909); degenerative disc disease (tr. at 896, 898); a herniated disc (tr. at 896, 907, 909); and "low back syndrome" (tr. at 901-3). He also diagnosed a renal cyst. (Tr. at 896.) Dr. Jamie prescribed pain medications for Claimant.

Claimant was evaluated at the request of the State by Eugene Evans, D.O. on October 31, 2001. (Tr. at 816-9.) Claimant reported low back and neck pain, which he described as a constant, aching pain which radiated into his hips, legs and feet. (Tr. at 816.) His neck pain radiated into his right shoulder and into his head, causing headaches. (Tr. at 816.) Claimant indicated that he took Ibuprofen twice a day, but no other medications. (Tr. at 817.)

Upon examination, Claimant walked with a limp and had difficulty performing a heel and toe walk. He also had difficulty

9

squatting but was able to squat halfway.  His range of motion was
normal in all areas except forward bending of the lumbar spine,
which was limited to 75 degrees.  Sitting and supine straight leg
raising tests were negative.  Claimant had full muscle strength in
all extremities and in his grip.  (Tr. at 817.)  Claimant had
tenderness in his knees, neck and back.  (Tr. at 817-8.)

Dr. Evans summarized that Claimant did not appear to have any
mental impairment severe enough to restrict his daily activities.
He commented, "It appeared that he would be able to do certain
work-related activities such as sitting, standing, walking,
lifting, carrying, handling objects, hearing, speaking and
traveling." (Tr. at 818.)  The MRI of Claimant's lumbar spine was
normal.  (Tr. at 820.)

In February, 2002, Dr. Jamie completed an Agency Reporting
Form (Physical).  (Tr. at 854-5.)  He indicated that Claimant
suffered degenerative disc disease and stenosis of L4-5, cystic or
neoplasm of the right kidney, and prostate enlargement.  Dr. Jamie
stated that Claimant's symptoms had not responded to the
medications he had prescribed.  Testing that day yielded range of
motion in Claimant's back of 20 degrees and straight leg raising
tests of 30 degrees bilaterally.  Dr. Jamie opined that Claimant
was unable to work. (Tr. at 855.)

On March 11, 2002, Rosalind Go, M.D. completed a Physical
Residual Functional Capacity Assessment form.  (Tr. at 857-64.)

10

Despite Claimant's reports of chronic pain in his back, neck, shoulder and shoulder blade area, and headaches, Dr. Go opined that Claimant was capable of medium work. (Tr. at 858-62). She stated that his pain and symptoms were partially credible as to expected duration and severity. (Tr. at 862.)

Scott W. Berneburg, D.P.M. treated Claimant for foot and ankle problems from April 2002 through February 2003. (Tr. at 878-89.) Although Claimant had pain in both feet and painful range of motion, he did have full leg strength. (Tr. at 889.) X-rays showed degenerative arthritic changes and dorsal spurring in both ankles. (Tr. at 889.) Dr. Berneburg diagnosed plantar fascitis of both feet; limb/foot pain; and ankle arthralgia/capsulitis/degenerative joint disease, bilateral. He also noted Claimant's painful ambulation. (Tr. at 889.) A course of injection therapy was undertaken and Claimant was advised to rest, limit his walking, wear arch supports, perform epsom soaks, use topical pain relievers, and stretch. (Tr. at 889.)

Claimant continued injection therapy with Dr. Berneburg, through September 2002. At that time, Dr. Berneburg noted that Claimant had good improvement following his injections, and that following treatment, his gait was normal. (Tr. at 880-1.) Thereafter, while Dr. Berneburg's diagnoses and recommendations remained the same, Claimant continued to report good improvement and to exhibit a normal gait. (Tr. at 878-80.)

On March 8, 2003, Dr. Jamie completed a Medical Assessment of Ability to Do Work-Related Activities (Physical). (Tr. at 929-30.) He indicated that Claimant was limited to lifting 10 pounds with a maximum frequency of one hour in an eight-hour workday. (Tr. at 929.) He opined that Claimant could only stand for one-half hour in an eight hour day; and that Claimant could sit for 2 to 3 hours. Claimant could occasionally climb, balance, stoop, crouch, kneel, or crawl. (Tr. at 929-30.) He had no limitations in reaching, handling, feeling, seeing, hearing or speaking. He should avoid moving machinery, vibration and weather, but had no other environmental limitations. (Tr. at 931.) The only medical evidence cited by Dr. Jamie in support of these opinions were x-ray findings without designation. (Tr. at 932.)

Thereafter, in April 2003, Dr. Jamie assisted Claimant with a mobility-impaired parking application, certifying that Claimant was severely limited in his ability to walk, due to his condition. (Tr. at 950.) An x-ray of Claimant's lumbar spine showed minor osteophyte formation throughout the lumbar region and a slight reduction in the height of the L5 disc space suggestive of degenerative disc disease. There was also minor degenerative sclerosis in the distal lumbar facets, and mild to moderate degenerative changes in the sacroiliac joints. (Tr. at 949.)

Claimant was diagnosed with squamous cell carcinoma on his left hand in December 2000. (Tr. at 945.) This lesion was removed,

12

and by the end of January 2001, had healed well with no signs of recurrence.  (Tr. at 939.)   In December 2002, Claimant again reported lesions and moles on his hands.  These were treated with topical creams and his condition improved.  (Tr. at 937, 933, 934.) There is no evidence of treatment beyond April 2003.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to give due consideration to his physical and psychological complaints, as well as his reports of pain; failed to consider his complaints in combination; submitted an incomplete hypothetical to the vocational expert; and failed to give due weight to his treating physician's opinion. (Pl.'s Br. at 5-7.)   The Commissioner responds that the ALJ properly considered all of Claimant's complaints, incorporated all medically substantiated impairments into his hypothetical question, and fairly considered the treating physician's opinions. (Def.'s Br. at 8-14.)

Claimant's Brief is challenging in that it casts multiple, ill-defined one and two-sentence arguments without offering any case impact. For example, Claimant summarily argues that the ALJ failed to adequately consider his foot and ankle complaints. (Pl's Br. at 5.) A review of the opinion shows that the ALJ not only considered the medical evidence pertaining to these complaints, but found that Claimant's plantar fascitis was a severe impairment.

(Tr. at 19-20, Finding No. 2, 3, tr. at 24.)  The ALJ observed at the hearing, "Looks to me, based on [Dr. Berneburg's] report, that it's probably unreasonable to assume that you could do any job involving standing, so that would probably take us down as a minimum to sedentary type work activities." (Tr. at 85.)  Claimant argues that he could not stand for long periods of time; however, after treatment with Dr. Berneburg, Claimant reported improvement, and his gait returned to normal.  (Tr. at 878-81.)  After September 2003, it appears that Claimant discontinued treatment.  There is no indication that Claimant would be precluded from sedentary work by this impairment.

The ALJ specifically noted that he gave appropriate weight to Dr. Berneburg's records to the extent he opined that Claimant was limited in his ability to walk.  (Tr. at 23.) Moreover, as the ALJ noted, sedentary jobs require walking or standing *occasionally* rather than a significant portion of the time. (Tr. at 24.)

Claimant next alleges that the ALJ failed to afford sufficient weight to his eczema and carcinoma of his hands.  (Pl.'s Br. at 5.)  However, as the ALJ noted, by February 2003, these conditions were healing, and there were no residual limitations.  (Tr. at 21.)  No physician has opined that Claimant was functionally limited by these complaints to any degree or for any length of time.  Claimant has failed to meet his burden of proof on this point.

Claimant then states that the ALJ failed to accord sufficient

14

weight to his psychological problems; namely, his major depressive
disorder, single episode, together with his pain disorder and
borderline intellectual function. (Pl.'s Br. at 5.) The ALJ
specifically commented upon these conditions at page 20 of the
opinion, and found that Claimant's borderline intellectual
functioning was a severe impairment. He noted, however, that
Claimant's IQ scores exceeded the listing level, and that he had no
evidence of deficits in adaptive functioning, nor marked levels of
impairment. (Tr. at 21.)

Next, Claimant alleges error in the ALJ's failure to discuss
his severe headaches. (Pl.'s Br. at 5.) On his application,
Claimant alleged disability due to "leg, knee, ankle, back, neck
and shoulder pain and nerves." (Tr. at 753.) He did not list
headaches as a separate disabling condition. He specifically
denied headaches in January 2001 when visiting Dr. Saoud's office.
(Tr. at 940.) He did not report headaches to Dr. Welch in April,
2001. (Tr. at 928.) He did not report headaches at any of his 19
visits to his chiropractor during his treatment period from August
30 through November 5, 2001. (Tr. at 821-38.) State evaluator
Eugene Evans, D.O., appears to have considered headaches in
connection with Claimant's neck complaints in November 2001, since
Claimant stated that his neck pain radiated into his head. (Tr. at
816.) While Claimant occasionally complained of headaches to Dr.
Jamie throughout 2002, they were not the constant complaint he now

asserts. (Tr. at 890-914.)

Notably, Claimant did not pursue a psychiatric consult or pain management as Ms. Posey recommended in September 2001. (Tr. at 809.) In fact, Ms. Posey's records show that Claimant was only taking Advil for pain, reportedly due to lack of insurance for Celebrex. (Tr. at 804.) Records from Dr. Evans reflect that Claimant was only taking Iboprofen at that time. (Tr. at 817.)

All of the above demonstrates that Claimant's headaches were not severe or disabling as he alleges. He points to no evidence which should have been considered by the ALJ or which may have changed the outcome of his case.

Claimant then asserts that his kidney cysts and wrist complaints should have been afforded greater weight. (Pl.'s Br. at 6.) While Claimant was diagnosed with a right renal cyst, he was not undergoing any treatment for same after March 2002. (Tr. at 898-924.) He denied kidney complaints to Dr. Saoud in December 2002. (Tr. at 938.) With respect to Claimant's carpal tunnel complaints, the ALJ noted that there are no workups or treatment records for this condition in the file, and no records indicating of decreased sensation in Claimant's hands. (Tr. at 22.)

Claimant next argues that the ALJ should have found his subjective complaints credible. (Pl.'s Br. at 5.) Social Security Ruling 96-7p directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about

the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record.  This includes, but is not limited to:

- The medical signs and laboratory findings;

- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

In this case, the ALJ noted that the record contained only minimal findings such as "mild" degenerative disc disease and "probable stenosis." (Tr. at 22.) Claimant did not complete the follow up evaluations that were recommended.  While plantar fascitis was diagnosed, Claimant did not take the medicines prescribed and did not state whether he was performing the exercises recommended by Dr. Berneburg.  Claimant alleged carpal tunnel syndrome, yet the ALJ found no workups for this complaint and no reports of decreased sensation in his hands.  (Tr. at 22.) Claimant's alleged need to lie down seven or eight times a day was

contradicted by the objective evidence, by Dr. Evans' findings, and by Dr. Jamie's findings that he could engage in sedentary work. As the ALJ further noted, Claimant specifically denied any joint, muscle or back problems upon presenting to Dr. Saoud for his skin complaints. (Tr. at 22, <u>citing</u> tr. at 947.) The ALJ noted that multiple examiners have found Claimant to be in no acute distress, and have noted clinical and objective findings which contradict his complaints of severe, disabling pain and limited daily activities. (Tr. at 22.)

Further, the ALJ observed, the records show that Claimant was non-compliant with medical advice in some respects. For example, Claimant failed to see a psychiatrist to determine the need for medications, failed to obtain pain management as recommended for his "chronic pain", and failed to demonstrate that he performed exercises recommended for his plantar fascitis. Instead, Claimant chose to treat with pain medications from a family practitioner who prescribed them based upon his subjective complaints. (Tr. at 22.)

The court proposes that the presiding District Judge find that the ALJ's assessment of Claimant's credibility was supported by substantial evidence.

As part of his credibility argument, Claimant passingly asserts that the ALJ failed to consider his complaints in combination. A reading of the detailed medical discussion contained in the opinion (tr. at 19-22) and the multi-part

18

hypothetical question *infra* reveals that the ALJ thoroughly considered all aspects of the Claimant's conditions together. Moreover, the ALJ found that Claimant had a residual functional capacity for sedentary work that is simple, involving one or two steps. (Tr. at 23.)  This demonstrates that he considered not only Claimant's physical impairments, but his psychological limitations as well.

The bottom line in Claimant's case—no matter how he styles his arguments---is that his complaints of pain and dysfunction lack clinical foundation, and do not coincide with his failure to pursue treatment or relief, his statements to his physicians, or the rest of the record.   The court proposes that the presiding District Judge find that the ALJ's decision concerning the combined effect of Claimant's impairments and his pain was supported by substantial evidence.

Claimant argues that the ALJ's hypothetical question to the vocational expert was inadequate. (Pl.'s Br. at 5-6.)   The ALJ posed the following hypothetical:

> If I had an individual age 46 with a tenth grade education and an unskilled work background, who is limited to sedentary work, unskilled, simple, one, two step activities, and—let's just leave it at that at this point. Would I be expected to find jobs for such an individual?
>
> ****
> ...Now if I added a factor that due to pain and the affects of medication, the individual had a marked problem with concentration, would

that eliminate jobs?

****

...if I had an individual who needed to take seven or eight breaks during a day and lay down periodically would that present an incapable work activity?

****

(Tr. at 91-93.)

Claimant's attorney conceded at the hearing that Claimant's need to soak his feet twice a day would not interfere with work activities.  (Tr. at 94.)  Hence, his argument in Brief that this point should have been included is moot.

Claimant argues that the ALJ should have questioned the vocational expert about the effect his alleged inability to deal with the public.  (Pl.'s Br. at 5.) However, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  In this case, Dr. Lilly specifically found that Claimant had no significant limitations dealing with the public.  (Tr. at 867.)  Claimant offers no evidence to the contrary.  In addition, the court notes that Claimant failed to submit such an impairment in his questions to the vocational expert upon cross-examination.  His argument now that a different result might have been obtained is mere speculation.

Claimant's argument that the ALJ failed to include his alleged need to lie down seven or eight times during the day is in error. As shown above, the ALJ did incorporate that very limitation. (Tr. at 92.) However, the ALJ properly determined that Claimant was not limited to that degree; there is no medical evidence substantiating this alleged need. No physician has made such recommendation or prescribed such a limitation. As the ALJ stated in the opinion, this allegation contradicts the objective evidence, as well as the reports of the state medical examiner, Dr. Jamie, and Dr. Saoud. (Tr. at 22.) As such, the ALJ was not bound to incorporate this limitation into his hypothetical, nor to adopt the expert's response.

The court proposes that the presiding District Judge find that the ALJ's hypothetical question to the vocational expert was complete, based upon the medically substantiated complaints of record.

Claimant then argues that the ALJ erred in failing to afford greater weight to the opinion of his treating physician, Dr. Jamie. (Pl.'s Br. at 6.) In actuality, Claimant alleges that the ALJ erred in rejecting Dr. Jamie's initial finding of disability, and in adopting his second report, finding Claimant capable of sedentary work. Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 416.927(d)(2003). Among these factors are considerations of

supportability and consistency.  Id.  Medical opinions which are inconsistent with the rest of the record are entitled to less weight.  20 C.F.R. § 416.927(d)(4)(2003).  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 416.927(d)(2)(2003).

The ALJ complied with the regulations.  He compared the two reports of Dr. Jamie (tr. at 22-3, citing tr. at 854-6, 929-32) and found the latter report was consistent with other medical evidence, including Dr. Evans' opinion at Exhibit 3F. (Tr. at 22, citing tr. at 816-20.)  The ALJ observed the comprehensive nature of Dr. Evans' opinion and its objective supporting evidence.  Further, the ALJ noted that Dr. Jamie's second report was the more recent report, that it contained more detailed findings, and it was more consistent with the record as a whole than an earlier, unsupported statement that Claimant was "disabled".  In short, the ALJ did not reject Dr. Jamie's opinions; he simply chose to adopt the more current report which corresponded with the rest of the record.

The court proposes that the presiding District Judge find that the ALJ's decision to adopt the latter report of Dr. Jamie was supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's

22

Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.


  July 8, 2005    
      Date

Mary E. Stanley
United States Magistrate Judge

24